UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HAROLD SMITHERMAN,                    )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )    C.A. No. 13-10161-PBS
                                      )
ANTHONY J. STEVENSON, et al.,         )
                                      )
          Defendants.                 )
                                      )


**MEMORANDUM AND ORDER**

**JULY 12, 2017**

Saris, C.J.

     State prisoner Harold Smitherman brings this <u>pro</u> <u>se</u>
complaint against 39 defendants alleging that his constitutional
and statutory rights were violated while he was incarcerated at
the Souza-Baranowski Correctional Center ("SBCC").  Among other
things, he asserts that correctional officers used excessive
force on him, and retaliated against him when he complained.
For the reasons stated below, the Court **DENIES IN PART** and
**GRANTS IN PART** the motion for judgment on the pleadings (Docket
Entry No. 69) brought by the Department of Corrections
Defendants ("DOC Defendants").[1]

_____

[1] This action was reassigned to the undersigned on April 27,
2017.

## I.  Factual Background

When all reasonable inferences are drawn in favor of the nonmoving party, the complaint sets forth the following facts, most of which are disputed.

## Count I: "Misuse of Force"[2] (Compl. ¶¶ 32-65, 132-133)

On August 2, 2012, Correctional Officers Matthew Wisnewski, Matthew Harris, Anthony Stevenson, Brian Boisse, Erick Colston, seven or more "John Doe" correctional officers, and Sergeant Pasquel used force against Smitherman.  Without provocation or any need for force, the defendants "grabbed Smitherman around the neck and slammed him face first to the floor," punched and kicked Smitherman in the head, face, and back, held Smitherman down on the floor so that other officers could continue the attack, sprayed a chemical agent in his face, beat him with a metal detector, purposely applied handcuffs and shackles excessively tightly, and repeatedly refused to allow Smitherman to wash the chemical agent off his eyes and face.  Compl. ¶¶ 32-53.  Sergeant Jane Doe was present during these events but failed to intervene.  During these events, plaintiff suffered lacerations on his head, back, shoulders, wrists, ankles and exposure to chemical agent.  Id. ¶ 61.

---

[2] Although using quotation marks to refer to Smitherman's claims, the Court has standardized some of the capitalization of the words without noting each individual alteration. The Court also assigned numbers to the counts for clarity.

After the assault, one of the prison guards, defendant
Boisse, threatened to kill Smitherman if he complained about
what had happened.  Smitherman was then brought to the Health
Services Unit, where Lieutenant "John Doe" would not allow
Smitherman's restraints to be removed so that Nurse "Anne Moe"
could examine him for possible injuries.  The nurse only wiped
his face and left; and the correctional officers that remained
with Smitherman ignored his complaints that he was asthmatic and
was having difficulty breathing.

    That evening, Smitherman was placed in the Special
Management Unit.  Correction officers uncuffed him when he
arrived at the unit.  For this operation, the officers ordered
Smitherman to put his hands through the foot slot; Smitherman
complied.  However, instead of simply uncuffing or cuffing the
plaintiff, the correction officers (Boisse and Pasquel) pulled
his hands all the way through the food slot, causing Smitherman
to scream out in pain and his shoulder to snap.  Although
Smitherman complained that the officers were hurting him, they
"repeated the same abuse when removing the shackles."  Id. ¶ 54.
Shortly thereafter, a different cadre of correctional officers
(various "John Does") cuffed Smitherman in the same painful
manner.

    Based on these allegations, Smitherman brings claims for
violation of his rights under the Eighth Amendment and the

Massachusetts Constitution.  He also brings a tort claim for assault and battery.

## Count II: "Intentionally Interfering with Prescribed Medical Treatment" (Compl. ¶¶ 66-69, 134)

On August 13, 2012, Smitherman informed defendant Correctional Officers Boisse, Colston, and Jacob Roberts that "he had a medical handcuff restriction for . . . extra-large cuffs due to his shoulder injury and request that they use the available big cuffs when cuffing him for his mandatory showder [sic]."  Id. ¶ 66.  The officers, however, used the regular-sized cuffs, which caused Smitherman to experience serious pain in his shoulder.  His cuffs cut into his wrists, especially when one of the officers yanked on them.  When Smitherman complained about the pain, one guard replied, "[T]hat's . . . what you get for complaining about being threaten [sic]."  Id. ¶ 67.

Based on these allegations, Smitherman brings a claim for deliberate indifference to a serious medical need, in violation of his rights under the Eighth Amendment.

## Count III: "Failure to Protect" (Compl. ¶¶ 70-87, 135)

On July 10, 2012, Superintendent Bruce Gelb, Deputy Superintendents Michael Rodriguez and Osvaldo Vidal, and Captain Kevin Whippen moved Smitherman's known enemy into his cell. Both prisoners orally informed Osvaldo and Whippen, who were present, that they were enemies and could not be housed in the

same cell.  Smitherman and his enemy asked to be separated, but Osvaldo and Whippen replied "deal with it" and "next question." Id. ¶ 75.  Thereafter, the two prisoners assaulted each other. Smitherman injured his shoulder and scalp, and developed a headache and blurry vision.  Pursuant to the order of Gelb, Rodriguez, Osvaldo and Whippen, the two prisoners were placed again in the same cell, and another physical fight ensued; yet, Smitherman and his enemy were still assigned to the same cell. When guards ignored Smitherman's requests to speak with a medical professional about the placement and his history of sexual abuse, he cut his wrists to avoid the cell assignment. Smitherman was placed on suicide watch.

Smitherman asserts that the defendants are liable for violating his rights under the Eighth Amendment and M.G.L. ch. 127, § 22.

**Count IV: Alleged "Failure to Discipline Officers"**
**(Compl. ¶¶ 59, 60, 136)**

Gelb, Vidal, Rodriguez, Whippen, Jane Doe, and DOC Commissioner Luis Spencer failed "to take disciplinary or other action to curb the known pattern of misuse of chemical agent and of physical abuse of prisoners" by their subordinates."  Id. § 136.

**Count V:  Alleged "Retaliatory Disciplinary Action"**
           **(Compl. ¶¶ 88-101, 137)**

On September 1, 2016, plaintiff filed three formal grievances directly with the DOC's Director of Administrative Resolution, defendant Kristie Ladouceur, alleging that various officers and defendants misused force on August 2, 2013. Correctional Officer Jeffrey Cardin allegedly wrote a false disciplinary report against Smitherman in retaliation for filing informal and formal grievances about the guards' excessive use of force and use of a chemical agent.  Smitherman was charged with making false allegations against staff for his own personal gain.  Correctional Officer Donald Griffiths conducted the disciplinary hearing and ruled against him.  As a sanction, Smitherman lost certain canteen privileges.  Gelb subsequently denied Smitherman's appeal.  Smitherman asserts this alleged misconduct deprived him of his First Amendment rights.  There is no mention of defendant Bedard's conduct.

**Count VI: Alleged "Due Process Violation"**
           **(Compl. ¶¶ 88-101, 138)**

Plaintiff asserts significant deficiencies in regards to the hearing on the charge that Smitherman had made false allegations against staff, including a failure to provide Smitherman with adequate notice of the charges against him or with complete copies of relevant documents.

Based on these assertions, Smitherman brings claims for violations of his Fourteenth Amendment Due Process rights and state regulations regarding prisoner disciplinary hearings (103 C.M.R. §§ 430.11(1)(a)-(c), 491.07, and 491.17.(1).

**Count VII: "Double Bunk Policy"**
**(Compl. ¶¶ 118-130, 139)**

On different occasions from July through December 2012, Smitherman attempted to speak to mental health counselors about his history of being sexually abused, both as a child and while incarcerated.  On these particular incidents, the mental health counselors ignored him.  In December 2012, Smitherman filed a grievance on the matter, including a request that he be afforded a single-bunk cell because of this history of abuse.  His grievance was denied.

Based on these assertions, Smitherman brings claims for violations of rights under the Eighth Amendment, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., M.G.L. ch. 127, § 22, and 105 C.M.R. § 451.320.

**Count VIII: "Denial of Kosher Meal for Violating rule Without**
**Prior Notice of Rule" (Compl. ¶¶ 102-117, 140)**

Smitherman's religious belief requires him to eat a Kosher meal, which the defendants provided.  From September 1, 2012 through January 2013, Smitherman voluntarily began fasting to lose weight for medical purposes.  He limited his solid food intake to one meal a day, if at all.  Smitherman was under the

impression that at meal time, if he signed for his Kosher meal but did not eat it, he would have to throw it away or give it to another inmate, both of which were disciplinary violations. Thus, as a result of this self-imposed dietary regime, Smitherman did not always sign for his Kosher meal.

On October 1, 2012, Smitherman was informed that his name had been removed from the Kosher religious meal list. He wrote to the superintendent and spoke to the food service director about this issue and was informed about the policy at SBCC to remove a prisoner from the religious meal list if he fails to sign for his religious meal three times in a thirty-day period. Smitherman was hitherto unaware of this rule. Although he informed prison officials of the medical reason for which he had not signed for his Kosher meals, they refused to restore his name to the religious meal list. Based on these assertions, Smitherman asserts claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, the Massachusetts Constitution, and 103 C.M.R. § 477, 761.07(10).

## II. Discussion

### A.    Standard

"[A] motion for judgment on the pleadings serves 'as a vehicle to test the plausibility of a complaint,' [and] it is treated like a motion to dismiss under Rule 12(b)(6)." <u>In re</u>

Curran, 855 F.3d 19, 25 (1st Cir. 2017) (quoting Shay v.
Walters, 702 F.3d 76, 82 (1st Cir. 2012)).  In deciding a motion
under Rule 12(c)of the Civil Rules of Civil Procedure for
judgment on the pleadings, the Court "take[s] all well-pleaded
facts in the light most favorable to the non-moving party and
draw[s] all reasonable inferences in that party's favor."  Najas
Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir.
2016).  A complaint clears the pleading hurdle, when the
plaintiff's factual allegations "plausibly narrate a claim for
relief."  Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017)
(quoting Schatz v. Republican State Leadership Committee, 669
F.3d 50, 55 (1st Cir. 2012)).  "In order to give rise to a
"plausible" claim, a complaint must plead "factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id. at 72
(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In
reviewing the sufficiency of the complaint, the Court must
liberally construe the pleading because Smitherman is proceeding
pro se.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.   Procedural Issues**

**1.   Unserved Defendants**

Nineteen DOC Defendants have not been served.  The DOC
Defendants argue that they all should be dismissed under Rule
4(m) of the Federal Rules of Civil Procedure.  At the time this

9

action was initiated, Rule 4(m) required that service of summonses be completed within 120 days of the filing of the complaint.

Both the former and current versions of Rule 4(m) allow the Court to extend the period of time for service for good cause, which the Court will do in this instance. Summonses have not issued as to seventeen of the nineteen unserved DOC Defendants because they have fictitious names. The Court previously ordered that if, through discovery, Smitherman discovered the true identify of these parties, he should act promptly to amend the complaint. (Docket Entry No. 16). Because the parties have not been engaged in discovery, Smitherman presumably has not been able to identify these defendants. Accordingly, given the age of this case, the plaintiff shall name the defendants within 90 days of discovery or the "John Doe" defendants will be dismissed.

The other two unserved DOC Defendants--Pamela O'Dell and Donald Griffeths--could not be located by the United States Marshals Service ("USMS"). The return of service for both of them (Docket Entry Nos. 38, 39) indicates that, pursuant to Smitherman's instructions, the USMS attempted to serve both of them at SBCC but was informed that those defendants were no longer at that institution.

Accordingly, the Court will not dismiss these two unserved DOC Defendants. As to defendant Griffeths, counsel for the DOC Defendants shall, within twenty-one days of the date of this order either (1) notify the Court that service of summons and the complaint is waived; or (2) provide under seal an address at which Griffiths can be served.

At this time, service on O'Dell is not necessary. For the reasons set forth below, the Court is severing Count VIII from this action. Count VIII is the only claim in which O'Dell is identified as a defendant. Should Smitherman choose to pursue Count VIII in a separate action, the Court will address service on O'Dell at that time.

### 2.   Improper Joinder of Claims and Defendants

The DOC Defendants argue that Smitherman's complaint is subject to dismissal because he has improperly joined claims and defendants.

The Court agrees with the DOC Defendants that some of Smitherman's claims and defendants are improperly joined. Rule 18(a) of the Federal Rules of Civil Procedure provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to

relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1655 (3d ed. 2009). Rule 18(a) permits multiple claims against a single party, but it does not permit the joinder of unrelated claims against different defendants. <u>See, e.g.</u>, <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). Similarly, under Rule 20(a) of the Federal Rules of Civil Procedure persons may be joined as defendants in a single action if "there is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). These rules of joinder preclude plaintiffs from pursuing claims through a "buckshot" or "mishmash" complaint. <u>See</u> <u>George</u>, 507 F.3d at 607.

Here, Smitherman has not alleged that all of the defendants he has named participated in the same transaction or series of transactions and that a question of fact is common to all of the defendants. Thus, severing claims into separate actions is appropriate, see Fed. R. Civ. P. 21, and the Court will do so as follows: The claims which concern the alleged use of excessive force against Smitherman and retaliation against him for complaining of the same, shall remain in this action.[3] The Court will dismiss the remaining claims involving the conditions of confinement (Counts III, VII, VIII) without prejudice unless plaintiff informs the Court within 21 days that he wishes to pursue these claims as a separately filed action.

**C.    The Constitutional Claims**

> **1.    Official Capacity Claims under 42 U.S.C. § 1983 for Violations of the First, Eighth, and Fourteenth Amendments**

Smitherman brings claims for violations of his rights under the First, Eighth, and Fourteenth amendments of the United States Constitution. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Claims for violations of federal rights by state actors must be brought under 42 U.S.C. § 1983. In passing § 1983, Congress did not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordon, 440 U.S. 332, 365 (1979). Thus, Smitherman may pursue claims under § 1983 against

---

[3] As set forth *infra*, Counts IV and VI will be dismissed.

the defendants acting in their individual capacities, but the
§ 1983 claims against defendants acting in their official
capacities must be dismissed.

### 2. Count I: Misuse of Force

The DOC Defendants (Stevenson, Winewski, Harrison, Boisse,
Colston, and Pasquel and Roberts) contend that plaintiff has
failed to allege more than a de minimus use of force by the
defendants to state a plausible claim under the Eighth and
Fourteenth Amendments.  Id. at 17.  The DOC Defendants
themselves describe the pertinent factual allegations as
follows:

> Plaintiff alleges that on August 2, 2012 he was
> beaten by multiple defendants, had a chemical agent
> sprayed in his face, was beaten with a hand held metal
> detector and handcuffs, and had his cuffed arms pulled
> up multiple times causing injury to his shoulder,
> Complaint, ¶¶ 32-65, 132, 133. He further alleges he
> sustained lacerations to his head, back, shoulders,
> wrists and ankles, and that he was exposed to a
> chemical agent. Complaint, ¶ 61.

DOC Defs.' Mem. at 16. These factual allegations are sufficient
to state a claim.

### 3. Count II: Intentional Interference with Prescribed Medical Treatment--Handcuff Restriction

Smitherman claims his Eighth Amendment rights were violated
when the DOC Defendants Boisse, Colston, and Roberts allegedly

regular-sized handcuffs even though Smitherman had been prescribed a larger handcuff.

The DOC Defendants assert that Smitherman has "failed to provide any specific facts, or provided any evidence demonstrating that he, in fact, had a medically prescribed restriction regarding the size of handcuffs that should be used upon him." DOC Defs.' Mem. at 18. They further reason that a "[m]edical need for larger handcuffs is not sufficiently serious," id. at 18, and that, even if it were, "he can not demonstrate that DOC officials were deliberately indifferent to, and interfered with his medical needs," id. at 20. They conclude that, because "the plaintiff's claims were investigated by DOC staff members [who concluded the claims were unfounded], it cannot be said that the defendants were deliberately indifferent to his medical needs, serious or otherwise." Id. at 20.

Smitherman adequately alleges that he informed defendants Colston, Roberts and Boisse "that he had a medical handcuff restriction for big cuffs extra-large cuffs due to his shoulder injury." Compl. ¶ 66. A medical need for a cuff accommodation can be sufficiently serious for purposes of an Eighth Amendment claim, see e.g., McCreary v. Massey, 366 Fed. Appx. 516, 517-18 (5th Cir. 2010), and ignoring this need can also serve as the basis for an excessive force claim, see, e.g., Aldape v.

Lambert, 34 F.3d 619, 623-24 (8th Cir. 1994) (upholding jury verdict in favor of inmate on Eighth Amendment excessive force claim who claimed that prison guards ignored medical order that prisoner not be cuffed behind his back; rejecting defendant's argument that knowingly cuffing prisoner contrary to medical order was not serious enough to constitute Eighth Amendment violation).  The motion for judgment on the pleadings will not be granted in regards to this claim against Colston, Roberts and Boisse.

### 4.    Count IV: Failure to Discipline.

The DOC Defendants argue that supervisory liability under § 1983 cannot be based on a theory of vicarious liability.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'"  Velez-Rivera v. Agosto-Alicea, 437 F.3d 146, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).  "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'"  Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

The Court finds that Smitherman has not adequately pled direct involvement by six-named supervisory defendants (Gelb, Vidal, Whippen, Rodriguez, Spencer, and Jane Doe) in the constitutional violations that were physically carried out by their subordinates.  Smitherman asserts in conclusory fashion that all of the defendants who directly inflicted excessive force on him "have repeatedly engaged in excessive force against prisoners in the past," Comp. ¶ 59, and that the supervisory defendants "failed to take disciplinary or other action "to curb the known pattern of misuse of chemical agent and of physical abuse of prisoners" by these defendants," id. ¶ 135.  Further, Smitherman asserts that, despite the "known pattern of misuse of chemical agent," Gelb "authorized the Defendants, including Stevenson to carry and use chemical agent on prisoners at their discretion."  Id. ¶ 136.

These allegations insufficiently plead an affirmative link between the conduct of the Gelb, Vidal, Rodriguez, Whippen, Spencer, and Jane Doe and the unlawful use of excessive force directly inflicted on Smitherman by their subordinates.  To state a plausible claim of supervisory liability, the plaintiff must allege facts to support his bald-faced conclusion that the named individual defendants had a pattern of using excessive force which the supervisors knew about or that there was a pattern of misuse of chemical agents.  Accordingly, the Court

17

allows the motion for judgment on the pleadings on this claim as to Gelb, Vidal, Rodriguez, Whippen, Jane Doe and Spencer.

### 5. Count V: Retaliatory Disciplinary Action

Smitherman claims that he was retaliated against for filing an informal grievance concerning the alleged use of excessive force on August 2, 2012. The alleged retaliatory disciplinary report was filed on October 2, 2012 by Correctional Officer Cardin, who claimed that Smitherman made false allegations against staff for his personal gain. Smitherman further alleges that Correctional Officer Griffiths deliberately ignored his rights during the disciplinary process.

The alleged facts suggest a plausible connection between Smitherman's complaint of excessive force (conduct protected under the First Amendment), the disciplinary report charging him with lying about the use of force (the retaliatory action), and the alleged deficiencies in the hearing. If Smitherman's allegation of excessive force was false, then he was not engaged in conduct protected by the First Amendment. However, if Smitherman's grievance was truthful, a claim of an impermissible retaliatory motive is plausible.

Nonetheless, Count V shall be dismissed as to Superintendent Gelb, Correctional Lieutenant Greg Bedard and Director Ladouceur. Smitherman's only allegation against Gelb is that he denied Smitherman's appeal of the disciplinary ruling

against him.  See Compl. § 101.  Smitherman has not alleged

facts from which the Court can reasonably infer that Gelb knew

or should have known of the retaliatory nature of the

disciplinary charge or hearing, thus precluding any suggestion

of a retaliatory motive on his part or other involvement in the

alleged retaliation.

The Court will dismiss Bedard as a defendant because

Smitherman has not alleged any conduct by him.  In the

recitation of the parties, Smitherman identifies Bedard as a

correctional lieutenant "responsible for processing all

disciplinary matters."  Id. § 20.  Other than being named as a

defendant in Count V, this is the only mention of Bedard in the

complaint.  Similarly, there is no allegation that Ladouceur

took any action against him and therefore she is dismissed.

**6.    Count VI: Due Process**

Smitherman also claims that the deficiencies in the hearing

on the allegedly retaliatory disciplinary charge violated his

right to due process.

The Due Process Clause of the Fourteenth Amendment

"protects persons against deprivations of life, liberty, or

property; and those who seek to invoke its procedural protection

must establish that one of these interests is at stake."

Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  An inmate does

not, however, have a liberty interest in avoiding a particular

condition of confinement unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 222-23 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Here, the disciplinary procedure resulted in the temporary loss of canteen charges. This sanction does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See, e.g., Toney v. Owen, 779 F.3d 330, 341-42 (5th Cir. 2015). Accordingly, Smitherman did not have a liberty interest at stake. The motion for judgment on the pleadings will be granted on this claim.

### 7. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992). The DOC Defendants assert, in a conclusory manner, that the defense of qualified immunity applies to all of Smitherman's claims. In the context of an excessive force claim, "qualified immunity gives an officer the benefit of a margin of error." Mlodzinski v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) (quoting Morelli v. Webster, 552 F.3d 12, 24 (2009)).

Here, the facts, as alleged by Smithermen, do not present a
situation in which the defendants were acting within "a margin
of error" in regards to excessive force or retaliation.  A claim
of excessive force to subdue a convicted prisoner is analyzed
under the Eighth Amendment standard.  See Whitley v. Albers, 475
U.S. 312, 318-326 (1986).  Courts require that a claimant
"allege and prove the unnecessary and wanton infliction of pain"
to satisfy Eighth Amendment requirements.  Id. at 320.  It is
true that "[n]ot every push and shove, even if it may later seem
unnecessary in the peace of a judge's chambers, violates a
prisoner's constitutional rights."  Hudson v. McMillian, 503
U.S. 1, 9 (1992) (quoting Johnson v. Glick, 481 F.2d, 1028, 1033
(2d Cir. 1973)).  Whether the use of force against a prisoner
violates the Eighth Amendment "ultimately turns on whether force
was applied in a good faith effort to maintain or restore
discipline or maliciously and sadistically for the very purpose
of causing harm."  Whitley, 475 U.S. 312, 320-21 (quoting
Johnson, 481 F.2d at 1033).

Smitherman alleges that the defendants brutally attacked
him for no reason whatsoever.  His assertions set forth a
plausible claim for a violation of his rights under the Eighth
Amendment.  Because his right to be free from this alleged use
of excessive force was clearly established was clearly
established at the time, qualified immunity defense at the

pleading stage of the litigation is precluded. Similarly, a
prisoner's right to be free from retaliation for filing
grievances has long been clearly established. See Hannon v.
Beard, 645 F.3d 45, 48 (1st Cir. 2011) (holding that prisoners,
in filing their own grievances, are "plainly engaged in
protected activity"). Thus, where Smitherman has sufficiently
alleged that Cardin and Griffiths retaliated against him for
filing grievances, the defense of qualified immunity is not
supported by the pleading. Cf. Maldonado v. Fontanes, 568 F.3d
263, 270-71 (1st Cir. 2009) (upholding denial of qualified
immunity defense at the pleading stage, taking plaintiffs'
allegations as true).

   **D.    State Constitutional, Statutory and Regulatory Claims**

   Smitherman bring claims under the Massachusetts
Constitution, M.G.L. ch. 127, § 22, and various regulations of
the Massachusetts Department of Correction. The Commonwealth
has not waived its sovereign immunity as to any of these claims
against the state. Further, no private right of action exists
under M.G.L. ch. 127, § 22 which states that two prisoners shall
not be allowed to occupy the same room "unless the crowded state
of the institution so requires." See Cryer v. Spencer, C.A. No.
11-10654-DJC, 2012 WL 892883, at *6 (D. Mass. Mar. 15, 2012), or
under the various regulations cited by Smitherman, see Frawley
v. Police Com'r of Cambridge, 473 Mass. 716, 722 (2016) (a

                            22

private right of action cannot be inferred from the regulation of an agency of the Commonwealth); Hudson v. Com'r of Corr., 46 Mass. App. Ct. 538, 548 n.18 (1999) (same); 103 CMR §§ 430.02, 477.01, 491.01 (stating that regulations with those sections are not intended to confer procedural or substantive not otherwise granted by state or federal law). Accordingly, the claims under the Massachusetts Constitution, M.G.L. ch. 127, § 22, and Massachusetts regulations shall be dismissed.

The state tort claims of assault and battery, however, shall go forward. Under the Massachusetts Tort Claims Act, M.G.L. ch. 258 ("MTCA"), "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." M.G.L. ch. 258, § 2. Where the tortfeasor is employed by the Commonwealth, the state, as the "public employer," is the proper defendant. Massachusetts has not waived its Eleventh Amendment immunity in regards to claims under the MTCA, see Irwin v. Comm'r of Dep't of Youth Servs., 388 Mass 810, 821 (Mass. 1983). "By enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in Federal Court." Carusso v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). To the extent

Smitherman brings claims for negligence, they are barred. However, he has also brought claims for assault and battery. The MTCA explicitly excludes from its reach "any claim arising out an intentional tort." M.G.L. ch. 258, § 10(c). Accordingly, the motion for judgment on the pleadings shall not be granted as to the assault and battery claims.

## III. Conclusion

Accordingly, the motion for judgment on the pleadings (Docket Entry No. 69) is GRANTED as follows:

1.    Insofar as the plaintiff asserts official capacity claims under § 1983, those claims are DISMISSED.

2.    All official capacity claims under the Massachusetts Constitution are DISMISSED.

3.    All claims under M.G.L. ch. 127, § 22 and Massachusetts regulations are DISMISSED.

4.    Count VI, the Due Process claim arising out of Smitherman's disciplinary proceeding, is DISMISSED.

5.    Count IV--against Gelb, Vidal, Whippen, Rodriguez, Spencer, and Jane Doe--is DISMISSED.

6.    Count V shall be DISMISSED as to Gelb, Bedard, and Ladouceur.

7.    Counts III, VII, and VIII shall be severed from this case and within 21 days Smitherman shall notify the Court

whether he wants to proceed with a separate action on any of
these claims.

If Smitherman does not within 21 days notify the Court that
he wishes to pursue Counts III, VII, or VIII, the claims will be
dismissed without prejudice.  If Smitherman timely notifies the
Court that he wishes to prosecute Counts III, VII, and/or VIII:

> a.   The Clerk shall assign a new case number to the
>      new action.
>
> b.   The complaint in this action (Docket Entry No. 1)
>      shall be docketed in the new case as the
>      operative pleading.  Regardless of the date of
>      docketing of the complaint in a new action, it
>      shall be deemed filed on January 22, 2013.
>
> c.   If Smitherman wants to proceed with a new case,
>      he must pay the $400 filing fee or seek leave to
>      proceed without prepayment of the filing fee.  If
>      Smitherman is allowed to proceed without
>      prepayment of the filing fee, he will be required
>      to pay the filing fee over time, regardless of
>      the outcome of the action.

The motion for judgment on the pleadings is otherwise
DENIED.

8.   Further, as to DOC Defendant Griffeths, counsel for
the DOC defendants shall, within 14 days of the date of this

order, either (1) notify the Court that service of summons and the complaint is waived as to this defendant; or (2) provide under seal an address at which Griffiths can be served.

9.    Defendants D.J. Hager and Meaghan Dupuis' Motion for Judgment on the Pleadings (Docket Entry No. 72) is DENIED without prejudice pending plaintiff's decision as to when to file a new action.

10.   All discovery on the remaining claims shall be completed by November 1, 2017.  Any summary judgment motion shall be filed by November 15, 2017.

SO ORDERED.

/s/ Patti B. Saris _____
PATTI B. SARIS
CHIEF, U.S. DISTRICT JUDGE